UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. ROBERT OLSON, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 1:04-cv-0647-JDT-WTL |
| ITT EDUCATIONAL SERVICES, INC., d/b/a ITT TECHNICAL INSTITUTE, | ) ) ) ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS (Docket No. 29)**[1]

The Relator, Robert Olson, brings this *qui tam* action on behalf of the United States against the Defendant ITT Educational Services, Inc., d/b/a ITT Technical Institute ("ITT") pursuant to the civil False Claims Act, 31 U.S.C. § 3729 *et seq.* Now before the court is ITT's Motion to Dismiss (Docket No. 29). After carefully reviewing the parties' briefs and supporting materials, the court finds as follows:

**I.     BACKGROUND**

ITT provides technology-oriented postsecondary degree programs in seventy-nine institutes throughout the United States. ITT was under investigation by the federal government, apparently for conduct similar to that which is alleged by Olson in this case. On February 25, 2004, federal agents entered eleven ITT locations in eight

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

states, including ITT's Indianapolis campus and ITT's corporate headquarters, located in Carmel, Indiana, to execute search warrants and related grand jury subpoenas. At that time, the federal investigation was reported in several media outlets. The government has since concluded its investigation. The Department of Justice issued a letter to ITT on June 24, 2005, in which it indicated that its investigation has not revealed sufficient evidence to continue to designate ITT or any of its senior management as targets or subjects.

On April 8, 2004, Olson filed his *qui tam* complaint under seal pursuant to 31 U.S.C. § 3730. The United States declined to intervene and Olson served his complaint on ITT on March 4, 2005. The original complaint consisted of two paragraphs. After ITT filed its first Motion to Dismiss (Docket No. 17), Olson filed his Amended Complaint (Docket No. 26) on June 24, 2005.

The Amended Complaint alleges the following: Robert Olson was the primary instructor for the Information Systems Security ("ISS") Program at ITT's Indianapolis institute. (Am. Compl. ¶ 2.) In his role as instructor, Olson gained direct and independent knowledge of the information that forms the basis of his complaint. (*Id.* ¶ 3.) ITT "misrepresented that it was providing an education," when instead it "created a diploma mill in order to secure tuition fraudulently from the United States." (*Id.* ¶ 5.) In support of this allegation, the complaint lists several practices undertaken by ITT. For example, instructors were threatened and forced to pass students (*id.* ¶¶ 5, 10); admission standards were inadequate (*id.* ¶¶ 5, 7); attendance was not accurately recorded (*id.* ¶¶ 5, 11); exams and tests were inadequate (*id.* ¶ 9); textbooks were

inadequate and obsolete (*id.* ¶¶ 5-6, 8); enrollment numbers were falsely reported (*id.* ¶ 13); graduate placement numbers were "fraudulently" reported (*id.* ¶¶ 5, 12); ITT recruiters promised potential students a "hands on" experience, but the ISS program lacked adequate labs (*id.* ¶¶ 6-7, 17); and ITT recruiters provided "money kickbacks" to counselors at the Veterans Administration for recommending an ITT education (*id.* ¶¶ 5, 7).

On August 1, 2005, ITT filed its motion to dismiss Olson's amended complaint. On September 23, 2005, Olson filed his response in opposition to the motion to dismiss. On October 7, 2005, ITT filed its reply. The motion is now ripe for the court's review.

## II.   DISCUSSION

The False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, is an anti-fraud statute that imposes liability against any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government." 31 U.S.C. § 3729(a)(2). Persons who violate the FCA are liable for civil penalties and treble damages, plus the costs incurred in bringing an FCA lawsuit. *Id.* § 3729(a). To enhance enforcement, the FCA permits private persons known as "relators" to bring *qui tam* actions on behalf of the government. A *qui tam* suit is filed in camera, and remains under seal for sixty days. *Id.* § 3730(b)(2). The relator must present all material evidence to the government. The government then must choose to intervene and proceed with the *qui tam* action, or to decline intervention. *Id.* § 3730(b)(4). If the suit is successful, the relator receives a portion of the government's

recovery. *Id.* § 3730(d). In this case, the government has declined to intervene and Olson has proceeded with the action.

ITT provides three arguments in support of its motion to dismiss Olson's *qui tam* action. First, ITT argues that Olson's complaint fails to meet Federal Rule of Civil Procedure 9(b)'s requirement to plead fraud with particularity. Second, ITT contends that Olson's action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Finally, ITT argues that the *qui tam* action should be dismissed because Olson does not satisfy the original source requirements under 31 U.S.C. § 3730(e)(4). As will be discussed below, the court finds that the complaint should be dismissed for failing to satisfy Rule 9(b)'s pleading requirements.

### A. Pleading Requirements Under Rule 9(b)

Because the FCA is an anti-fraud statute, "claims under it are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *United States ex rel. Gross v. AIDS Research Alliance-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005) (citing *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003)). An FCA claim brought under 31 U.S.C. § 3729(a)(2)[2] has three essential elements: (1) the defendant made a statement in order to receive money from

---

[2] Olson fails to specify under which provision of § 3729(a) he is proceeding. Considering the nature of the allegations made in the complaint, Olson appears to be proceeding under § 3729(a)(2). Nevertheless, each provision under § 3729(a) is subject to the same heightened pleading requirements of Rule 9(b) and the court's analysis would not materially change if Olson had meant to bring this claim under a different provision of § 3729(a).

the government; (2) the statement was false; and (3) the defendant knew it was false. *Gross*, 415 F.3d at 604.  In order to satisfy Rule 9(b)'s heightened pleading requirement, the *qui tam* plaintiff must allege to the required degree of particularity the false statement or statements made by the defendant, with knowledge of their falsity, for the purpose of obtaining payment from the government.  *Id.* at 603.  "Particularity" requires the plaintiff to plead "the who, what, when, where, and how: the first paragraph of any newspaper story."  *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *See also Gross*, 415 F.3d at 605 (holding that the relator's allegations in the *qui tam* complaint failed to satisfy "'the who, what, when, where, and how' requirement for pleading fraud under Rule 9(b)"); *Garst*, 328 F.3d at 376; *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829 (S.D. Ind. 2005).

      The first challenge the court faces is to identify in the complaint any allegations of a false statement made by ITT for the purpose of obtaining payment from the government.  It appears that the gist of Olson's argument is that ITT knowingly made false statements to potential students in hopes that the students would enroll at ITT and pay tuition to ITT (and the source of the students' funds for tuition came from federal government financial aid programs).  Thus, argues Olson, ITT received tuition money from the government (through the students) as a result of the false statements made in recruiting potential students.  The court will now examine Olson's specific allegations of false statements to determine whether they were pleaded in a way that satisfies the heightened pleading requirement of Rule 9(b).

Olson makes the initial broad allegation that "the defendant misrepresented that it was providing an education," and instead "created a diploma mill in order to secure tuition fraudulently from the United States." (Am. Compl. ¶ 5.) This broad allegation, of course, fails the who, what, when, where, and how requirement for pleading fraud under Rule 9(b). But Olson then alleges several acts or practices of ITT in an effort to provide particular examples supporting this broad statement. However, these examples either fail to allege a false statement or fail to provide the necessary information to satisfy the heightened pleading requirement regarding the false statements. The following is a list of Olson's particular allegations against ITT:

(1) *Instructors were threatened and forced to pass students*: Apparently as proof that ITT did not provide an education (or at least an adequate education), Olson alleges that ITT threatened instructors to pass students who the instructors might not otherwise pass. (*Id.* ¶¶ 5, 10.) The problem with this allegation is that there is no false statement alleged. No where does Olson allege that ITT made a statement to its potential students (or anyone else) regarding the difficulty level of the classes. If anything, statements in the complaint may be interpreted as admitting that ITT in fact made the representation to its potential students that instructors were told to pass students: "Olson was in the hall outside the associate dean Mike Chelson's office when a recruiter was pitching a prospect. [The recruiter] said 'this is where you come if an instructor gives you a problem.'" (*Id.* ¶ 7.) Thus, the allegation that instructors were forced to

pass students does not include any connection to a false statement made to the students or the government.

(2) *The admission standards were inadequate*: Again, apparently as proof that ITT did not provide an education (or at least an adequate education), Olson alleges that ITT's admission standards were inadequate because they were too low. (*Id.* ¶¶ 5, 10.) This allegation suffers from the same flaw as the one before—that is, it alleges no false statement. No where does Olson allege that ITT made a statement to its potential students (or anyone else) regarding its admission standards. Without an allegation of a false statement regarding the admission standards, this allegation also fails to satisfy pleading requirements for an FCA claim.

(3) *Class attendance was not accurately recorded*: Similarly, Olson alleges that ITT's attendance recording policies led to inaccurately high attendance records. (*Id.* ¶¶ 5, 11.) But again, this allegation alleges no false statement. Olson never alleges that ITT made a statement to its potential students (or anyone else) that attendance would be taken in a way different than how Olson alleges it was taken. Thus, this allegation fails to satisfy pleading requirements for an FCA claim.

(4) *Class exams and tests were not difficult enough*: Olson alleges that class exams and tests were not sufficiently difficult. (*Id.* ¶ 9.) Once again, this allegation alleges no false statement. No where does Olson allege that

        ITT made a statement to its potential students (or anyone else) that exams would be more difficult than what they are alleged to have been. Thus, this allegation fails to satisfy pleading requirements for an FCA claim.

(5)     *Class textbooks were inadequate and obsolete*: In the same manner, apparently as proof that ITT did not provide an education (or at least an adequate education), Olson alleges that the textbooks used in ITT classes were inadequate and obsolete. (*Id.* ¶¶ 5-6, 8.) Like the others, this allegation alleges no false statement because Olson made no allegation that ITT made a statement to its potential students (or anyone else) that it would use textbooks that are higher quality than those allegedly used. This allegation also fails.

(6)     *ITT reported false graduate placement numbers*: Olson alleges that ITT falsely reported graduate placement numbers in an effort to recruit new students. (*Id.* ¶¶ 5, 12.) Unlike the previous allegations, this allegation includes an alleged false claim: making statements to potential students regarding graduate placement numbers that are allegedly not accurate. For example, Olson directly hired one of his students without going through ITT's placement office. He alleges that the placement office "took credit" for the placement. (*Id.* ¶ 12.) But simply making a false claim allegation is not sufficient, the allegation must satisfy the who, what, when, where, and how requirement for pleading fraud under Rule 9(b). Here, Olson fails to plead with any particularity the substance of the false claim.

        Instead, he merely alleges that ITT "took credit" for the placement. He does not plead how ITT took credit. For example, by taking credit for the placement, did ITT make a statement that it had found the job for the student, or did it merely make a statement acknowledging that the student was hired in a position after graduating from ITT. Likewise, he fails to state to whom a false statement was made. Simply alleging that ITT took credit for a placement is not sufficient to satisfy the heightened pleading requirements of Rule 9(b).

(7)    *ITT's promise of "hands on" experience*: Olson alleges that ITT promised potential students a "hands on" experience while recruiting students, but failed to supply adequate labs or resources to provide such an educational experience once the students were enrolled. (*Id.* ¶¶ 6-7, 17.) This allegation suffers from two flaws. First, it does not include an alleged false statement. No where does Olson state in his complaint that ITT made specific promises regarding the quality or even existence of its labs or resources. Instead, the complaint only alleges statements regarding "hands on" experience. Second, Olson fails to plead with particularity regarding the substance of ITT's claim that students would have "hands on" experience. The complaint does not specify who made these statements, to whom were the statements made, when were they made, and so forth. Instead, Olson only makes a broad allegation that recruiters "would always stress that students would have 'hands on experience.'" (*Id.*

¶ 7.) In addition, Olson admits in his complaint that he "created lab experiments" for the students, but he fails to specify how this lab experience does not constitute hands on experience. A general allegation suggesting that recruiters always promised hands on experience is not sufficient to satisfy the heightened pleading requirements of Rule 9(b).

(8) *Recruiters provided "money kickbacks" to counselors at the Veterans Administration*: Finally, Olson alleges that one of his students informed him that "counselors at V.A. received 'favors, including money'" for recommending ITT to potential students funded by the Veterans Administration. (*Id.* ¶¶ 5, 7.) But Olson provides no other information. He fails to plead who provided the kickbacks, which counselors are involved, when this happened, or any other particularities relating to the allegation. Such a general allegation of fraud fails to satisfy the Rule 9(b) requirements.

Olson's complaint contains several pages describing what he considers to be a low-quality education that is being offered at ITT. But he fails to plead with particularity that ITT promised its students a higher level of education than what they actually received. The purpose of the FCA is to prevent individuals from making false statements in order to receive money from the government. While Olson's complaint contains several pages describing what he considers to be a low-quality education that is being offered at ITT, he offers only a few general allegations of actual claims or statements made by ITT. Even when he manages to allege a false statement, he fails to plead that

-10-

allegation with any particularity and chooses instead to rely on general allegations.  This failure to plead a false claim with particularity is grounds for dismissal pursuant to Rule 9(b), and the complaint will be accordingly dismissed.

### B. Rule 12(b)(6) Challenge

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004).  When considering such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *Cole v. U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004); *Hentosh v. Herman M. Finch Univ. of Health Sciences/Chi. Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999).  Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

An FCA claim brought under 31 U.S.C. § 3729(a)(2) has three essential elements: (1) the defendant made a statement in order to receive money from the government; (2) the statement was false; and (3) the defendant knew it was false. *United States ex rel. Gross v. AIDS Research Alliance-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005).  In this case, Olson alleges that ITT knowingly made false statements to potential students for the purpose of recruiting the students and receiving tuition payments.  For example, Olson alleges that ITT falsely reported graduate placement numbers in an

effort to recruit new students. (Am. Compl. ¶¶ 5, 12.) Olson also alleges that the federal government was the source of tuition amounts paid to ITT. (*Id.* ¶¶ 5, 18.) According to Olson, these allegations are sufficient to survive a Rule 12(b)(6) challenge. However, ITT argues that even if these allegations were considered true, they still fail to state a claim upon which relief can be granted because Olson does not allege that ITT submitted a claim for payment from the government.

Despite ITT's assertion otherwise, Olson makes allegations in his complaint that ITT submitted claims for payment from the government. The complaint alleges that "[ITT] knowingly made, and used false records and statements to fraudulently obtain student loans from the United States Government. . . . [ITT] created a diploma mill in order to secure tuition fraudulently from the United States." (*Id.* ¶ 5.) While these broad allegations greatly lack the specificity required by Rule 9(b), they nonetheless allege that ITT knowingly made false statements in order to obtain federal financial aid payments from the government in the form of student tuition. Dismissal is only appropriate under Rule 12(b)(6) if "no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Ledford*, 105 F.3d at 356 (quoting *Hishon*, 467 U.S. at 73). Here, there are possible sets of facts consistent with the complaint's allegations that could be alleged and proved in this action. For example, student tuition payments could have been paid by the United States to ITT through the Federal Pell Grant Program, which would be consistent with Olson's allegation that ITT "secure[d] tuition from the United States." (Am. Compl. ¶ 5.) The Pell Grants are direct grants of student financial aid. A student at a participating school applies for a Pell

Grant.  If the school finds the student eligible, it asks the Department of Education for funds to pay the grant.  This type of payment would satisfy the meaning of "claim," as defined by the FCA:

> "[C]laim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(c).

Olson's broad allegations of false claims made to the government save his complaint from dismissal under Rule 12(b)(6).  However, these same broad allegations require the court to dismiss the complaint for failing to plead fraud with particularity, as required by Rule 9(b).  As already discussed, Olson fails to plead the specifics regarding, for instance, how the false claims were submitted to the government, how the payments were made to ITT, in which federal financial aid programs did ITT participate in, when were these claims submitted, and so forth.  So, while ITT's Rule 12(b)(6) challenge to Olson's complaint is denied for now, the complaint will still be dismissed pursuant to Rule 9(b).

### C.    § 3730(e)(4)(A) Original Source Challenge

ITT also contends that this action is barred by 31 U.S.C. § 3730(e)(4)(A), which provides in pertinent part:

-13-

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigaiton, or from the news media, unless . . . the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). The court makes a three part inquiry when determining whether it has jurisdiction over an action under the FCA: (1) whether the allegations have been publicly disclosed; (2) if so, whether the action is based upon those publicly disclosed allegations; and, (3) if so, whether the plaintiff is an "original source" of the information upon which the allegations are based. *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir. 2003); *United States ex rel. Mathews v. Bank of Farmington*, 166 F.3d 853, 859 (7th Cir. 1999).

First, ITT contends that Olson's allegations had been publicly disclosed prior to the filing of Olson's complaint. Olson does not appear to dispute this claim. He filed his initial complaint in camera on April 8, 2004. However, prior to Olson's filing, ITT was the subject of a federal criminal investigation that included the execution of federal search warrants at eleven ITT locations on February 25, 2004. (Second Request Judicial Notice, App. 1, Tab A.) The investigation involved grand jury subpoenas of records concerning student placement, retention, graduation, attendance, recruitment, grades, graduates' salaries, and transfers of students' credits to other colleges. (*Id.* Tab C.) Because the investigation preceded Olson's action and involved similar information as contained in Olson's complaint, Olson's allegations had been publicly disclosed prior to the commencement of his action.

The court must next determine whether Olson's *qui tam* action is based upon those publicly disclosed allegations. An action is "based upon" public disclosures within the meaning of § 3730(e)(4)(A) when it "both depends essentially upon publicly disclosed information and is actually derived from such information." *Feingold*, 324 F.3d at 497 (quoting *Mathews*, 166 F.3d at 864). Olson's action depends upon the information that has already been publicly disclosed. But, it is irrelevant that Olson's claim alleges the same information that has already been publicly disclosed unless Olson got the information on which his claim is based from the actual public disclosure. *See Mathews*, 166 F.3d at 863. As long as Olson did not rely, even in part, on the public disclosure as the source of his information, then § 3730(e)(4)(A) does not bar the court from entertaining this action. There has been no showing that Olson relied on the public disclosure for information used in his complaint. Indeed, the allegations from his complaint show that Olson's information supporting the allegations originated from his own personal experience as an instructor at ITT. Because the action is not based upon publicly disclosed information, the analysis stops here and there is no need to discuss whether Olson is an original source.[3] Accordingly, § 3730(e)(4)(A) does not bar Olson's *qui tam* action.

### III.  CONCLUSION

---

[3] However, the court notes the probability that in order to plead with sufficient particularity to satisfy Rule 9(b) requirements, Olson may have to rely upon information that has already been publicly disclosed. If this becomes the case, the court will make an additional inquiry into whether the action will then be barred by § 3730(e)(4)(A), so Olson ought to carefully consider whether he can properly replead his claim.

For the foregoing reasons, ITT's Motion to Dismiss (Docket No. 29) will be **GRANTED**. Olson's FCA action will be **DISMISSED WITHOUT PREJUDICE**. The dismissal is premised on technical pleading deficiencies, and thus Olson should have the opportunity to cure any defects through the filing of an additional amended complaint. Olson shall have **thirty (30) days** from the date of this entry in which to replead more specific factual allegations consistent with Rule 11.

ALL OF WHICH IS ENTERED this 9th day of January 2006.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Bryan Boyd Arnold
Gibson Dunn & Crutcher LLP
barnold@gibsondunn.com

Raymond F. Fairchild
rayfairchild@earthlink.net

Timothy John Hatch
Gibson Dunn & Crutcher LLP
thatch@gibsondunn.com

Erin Reilly Lewis
United States Attorney's Office

erin.lewis@usdoj.gov

Thomas Eugene Mixdorf
Ice Miller LLP
thomas.mixdorf@icemiller.com

Tamareeshi Shadona Snowden
Gibson Dunn & Crutcher LLP
tsnowden@gibsondunn.com

Philip A. Whistler
Ice Miller LLP
philip.whistler@icemiller.com